IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-02575-MSK-PAC (MEH)

In re:

APPLICATION OF MICHAEL WILSON & PARTNERS, LIMITED, FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782.

---

**PARTIAL ORDER ON PETITIONER'S MOTION TO COMPEL COMPLIANCE WITH SUBPOENAS**

---

Before the Court is Petitioner's Motion to Compel Compliance with Subpoenas [Docket #6]. The matter is briefed and has been referred to this Magistrate Judge Coan [Docket #8]. This Court has been sub-assigned to this case after Judge Coan's retirement. Oral argument was held on July 20, 2007. For the reasons stated below, the Court **grants in part**, **denies in part**, and **reserves ruling in part** on Petitioner's Motion to Compel.

**I. Facts**

Petitioner Michael Wilson & Partners, Limited ("MWP") is an international law firm that is seeking discovery from former clients who have ended their business relationship with Petitioner in favor of one with a law firm comprised of Petitioner's former partner Mr. Emmott, and former associates, Messrs. Nicholls and Slater. Petitioner has instituted a lawsuit against Mr. Emmott in England seeking evidence related to Petitioner's claims against Emmott in private arbitration proceedings. Petitioner has also filed suit against Messrs. Nicholls and Slater in Australia alleging accessory liability for dishonest assistance, conspiracy to defraud, and breaches of fiduciary and contractual duties, including breaches of restrictive covenants and duties of confidentiality.

Petitioner filed its Application for discovery pursuant to Section 1782 to obtain documents

and deposition testimony from two former clients, Sokol and Frontier Mining, as well as the principal owners of these companies, Mr. Sinclair and Mr. Savage, respectively. The two companies are both Delaware corporations with principal places of business in Centennial, Colorado. Petitioner argues that Emmott diverted business from these clients away from MWP and to the firms and companies with which he is now associated. Petitioner contends that many of its clients compensate the firm for its legal work by giving the firm a stake in the underlying venture. Petitioner asserts that Emmott has received an interest in one project, the Max Petroleum project, and likely others, as a result of work he completed while still associated with MWP. Thus, Petitioner seeks documentation related to ten different ventures around the world in which Petitioner believes that an interest or compensation for the project has been diverted from MWP and to a company owned or controlled by Emmott, Nicholls, and Slater.

District Judge Marcia S. Krieger granted Petitioner's Application under Section 1782, and MWP served subpoenas on Respondents in January and February 2007. Respondents objected to the subpoenas on various grounds, and after some months of conferring, Petitioner filed the instant Motion to Compel.

In response to the Motion, Respondents argue that Petitioner did not meet the requirements of Section 1782, that, even if the requirements are met, this Court should decline to exercise its discretion to allow the discovery because it cannot be used in the foreign proceedings, and finally that the Court lacks jurisdiction over Mr. Sinclair. Respondents also object to the scope of the subpoenas and request a protective order with an "Attorneys' Eyes Only" provision. The Court reserves consideration of these issues, as well as any cost-sharing or requests for fees, until after the parties file a status report on August 3, 2007, indicating the scope of the subpoenas remaining in dispute.

## II. Discussion

### A. Jurisdiction for discovery under Section 1782

Petitioner must meet the following four requirements for an application under Section 1782 to be granted:

> (1) the request must be made "by a foreign or international tribunal," or by "any interested person"; (2) the request must seek evidence, whether it be the "testimony or statement" of a person or the production of "a document or other thing"; (3) the evidence must be "for use in a proceeding in a foreign or international tribunal"; and (4) the person from whom discovery is sought must reside or be found in the district of the district court ruling on the application for assistance.

*In re Clerici*, 481 F.3d 1324, 1331-32 (11th Cir. 2007).

Here, the first two requirements are easily met, in that Petitioner instituted the foreign actions and is seeking documents as well as depositions. Respondents argue that the third requirement is not met, because the foreign tribunals will not allow the information sought to be used in the foreign proceedings. Specifically, Respondents contend that the information received is more likely to be used in private arbitration proceedings, which Respondents contend are not subject to Section 1782. The starting point in this discussion is the two proceedings referenced in the Application, the English and Australian proceedings. Notably, the English proceedings involve matters of discovery, which Respondents argue are ancillary to the private arbitration, and therefore, the information sought will not be used in this foreign proceeding. Nevertheless, the Australian court has frozen assets belonging to the foreign defendants, to which MWP claims an ownership interest. And it appears that both the English and Australian proceedings will determine the legal rights of the parties appearing before them as to the assets at issue.

Under the Supreme Court's broad interpretation of a "foreign proceeding," the crucial inquiry

is whether the current proceedings will lead to a decision on the merits, which does not require that foreign proceedings even be pending. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258-259 (holding that proceeding involving a "first-instance decisionmaker" satisfies the requirements of Section 1782 and finding that Congress intended that "judicial assistance would be available 'whether the foreign or international proceeding or investigation is of a criminal, civil, administrative, or other nature") (citation omitted); *cf. Euromepa v. R. Esmerian*, 154 F.3d 24, 28 (2d Cir. 1998) ("*Euromepa II*") (concluding that jurisdiction was not proper under section 1782 because the merits of the dispute had already been adjudicated and were simply being enforced). The rights of either party have yet to be determined, and the information sought in this case is relevant to the parties' rights to these assets. The information sought, therefore, may be of use in those proceedings.

Whether the foreign tribunals will, in fact, use the information requested goes not to this Court's jurisdiction, but rather, to its discretion to exercise that jurisdiction. *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 84 (2d Cir. 2004) ("[T]here is no requirement under § 1782 that the type of discovery sought be available in the relevant foreign jurisdiction."). Finally, the Sokol, Frontier Mining, and Mr. Savage are all "found" in this District, because Mr. Savage is a resident of Colorado, and the corporations have their principal places of business in Colorado. Even though the primary corporate representatives may be overseas, it is clear for purposes of section 1782 that the corporations are "found" in this District.

**B. Discretion to allow discovery under Section 1782**

Once Petitioner meets the requirements of Section 1782, this Court must also consider the following twin aims of the statute: "providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide

similar means of assistance to our courts." *In re Application of Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992). It is under this guidance that the foreign courts' view of discovery is most relevant. Even though Section 1782 includes no foreign-discoverability requirement, this Court's discretion is to be guided by "the nature, attitude, and procedures of [the foreign] jurisdiction." *Schmitz,* 376 F.3d at 84.

Other factors the Court should consider before exercising its discretion include (1) whether the party from whom discovery is sought is a participant in a foreign proceeding, or already subject to the jurisdiction of the foreign tribunal; (2) the nature and character of the foreign proceedings; (3) the receptivity of the foreign tribunal to such judicial assistance; (4) whether the request is an attempt to circumvent foreign discovery restrictions; and (5) whether the requests are unduly intrusive or burdensome. *See Intel Corp.*, 542 U.S. at 264-265.

Based on the Court's consideration of the factors listed above, the Court determines that some discovery is appropriate. First, although Mr. Sinclair is a party in a related proceeding in the Bahamas, neither corporation is a party in that action, and the information is not sought for use in the Bahamian proceedings. Despite Respondents' promises to cooperate in the foreign proceedings, none of the Respondents are subject to the jurisdiction of either the English or Australian courts, for which this discovery sought. Notably, Respondents state that they will refuse to cooperate in the foreign proceedings if this discovery is allowed, while at the same time claiming that they fully support the foreign defendants and would consent to foreign jurisdiction should this Court refuse to allow discovery. This would leave Petitioner in the position of allowing Respondents to participate in the foreign proceedings, in support of their opponents, while leaving no recourse for Petitioner should Respondents later refuse to cooperate with Petitioner. More importantly, this is not the standard

contemplated by Section 1782, and it underscores the propriety of allowing discovery in the Court that maintains jurisdiction over that party. *See In re Gemeinshcaftspraxis Dr. Med. Shottdorf*, No. M19-88, 2006 U.S. Dist. LEXIS 94161, *18 (S.D.N.Y. Jan. 4, 2007) (noting that the proper inquiry includes the interested party's need for discovery, not simply the foreign tribunals' need for the discovery) ("When the target of discovery is not a party the foreign tribunal may be less inclined -- even if it is empowered -- to compel third-party discovery. . . .").

Second, the foreign proceedings are intended to resolve the ownership interests in certain assets based on Petitioner's claims. Discovery as to other ownership interests in these assets seems appropriate. Although Respondents argue that the foreign proceedings are in their infancy and have not yet reached the discovery stage, this is irrelevant to this Court's consideration, because the statute only requires that the appropriate proceedings be "within reasonable contemplation." *In re Application of Servicio Pan Americano de Proteccion*, 354 F. Supp. 2d 269, 273-74 (S.D.N.Y. 2004) (citing *Intel Corp.*, 542 U.S. at 259).

Third, Respondents also claim that the foreign tribunals would enjoin this discovery, although no party in the foreign proceedings has moved for such an injunction since the subpoenas were served in January and February of this year. *E.g.*, *In re Microsoft Corp.*, No. 06-80038, 2006 U.S. Dist. LEXIS 24870 (N.D. Cal. Mar. 29, 2006) (denying discovery based in part on a letter sent by the foreign tribunal indicating that the discovery sought was not desired by that tribunal).

Importantly, a consideration of foreign law is most appropriate when the discovery is sought against a party to the foreign proceeding and primarily considers the fairness of the underlying proceedings, not the substantive law of the of foreign jurisdiction. *John Deere, Ltd. v. Sperry Corp.*, 754 F.3d 132, 136 (3d Cir. 1985) ("it is doubtful whether such language can be expanded to impose

a requirement that district courts predict or construe the procedural or substantive law of the foreign jurisdiction."); *accord Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995) (*Euromepa I*") (reversing a district court's decision because it was based on a "battle-by-affidavit of international legal experts"). In *Euromepa I*, the Second Circuit rejected the lower court's detailed analysis of French law as a "'superficial' ruling on French law" and explained its reasoning as follows:

> We think that it is unwise -- as well as in tension with the aims of section 1782 -- for district judges to try to glean the accepted practices and attitudes of other nations from what are likely to be conflicting and, perhaps, biased interpretations of foreign law. Although "[a] grant of discovery that trenched upon the *clearly established* procedures of a foreign tribunal would not be within section 1782," *John Deere, Ltd.*, 754 F.2d at 135 (emphasis added), we do not read the statute to condone speculative forays into legal territories unfamiliar to federal judges. Such a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the "twin aims" of the statute.
>
> Rather, we believe that a district court's inquiry into the discoverability of requested materials should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782. Such proof, as embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures, would provide helpful and appropriate guidance to a district court in the exercise of its discretion. Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in "providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects." *Senate Report* at 3783; *cf. Aldunate*, 3 F.3d at 62 ("despite no specific finding as to the availability under Chilean law of pre-trial discovery . . ., [the district judge] satisfied himself that granting the section 1782 application on the facts before him would not counter the statute's 'twin purposes'").

*Id.* at 1099-1100.

On this basis, the Court does not view the affidavits submitted by the parties as providing significant insight for the Court's analysis. Absent the foreign tribunals' intercession in this case, this Court believes that neither court would be hostile to this discovery, based on the cases cited by the

parties in this action. *E.g., Fleischmann v. McDonald's Corp.*, 466 F. Supp. 2d 1020, 1027 (N.D. Ill. 2006) (citing cases holding that foreign admissibility is not required and applying the standards of the Federal Rules of Civil Procedure to determine whether discovery is "for use in" the foreign proceeding).

Fourth, none of the Respondents are parties to the foreign proceedings for which this discovery is sought. As such, the likelihood that Petitioner is seeking to circumvent foreign discovery restrictions is lessened. Rather, it appears that Petitioner, recognizing Respondents' hostility to its claims, has properly sought judicial assistance from the jurisdiction in which three of the four Respondents admittedly reside. *See Lopes v. Lopes*, 180 Fed. Appx. 874, 877 (11th Cir. 2006) (explaining that the person from whom discovery is sought under section 1782 must not be subject to the jurisdiction of the foreign tribunal).

Finally, as stated at the hearing held in this matter, the Court does believe that deposing all four Respondents, which would, in essence, require two depositions of both Mr. Sinclair and Mr. Savage, is unduly burdensome and intrusive. Moreover, MWP's former clients that were allegedly diverted to new firms by Emmott are the corporate Respondents, not the individual Respondents. Accordingly, the Court determines that discovery against Mr. Sinclair and Mr. Savage is unduly intrusive and will quash these depositions. The depositions of Sokol and Frontier Mining will be allowed.

## III. Conclusion

Accordingly, for the reasons stated above, it is hereby ORDERED that Petitioner's Motion to Compel Compliance with Subpoenas [Filed June 20, 2007; Docket #6] is **granted in part and denied in part**. Specifically, the Court quashes the subpoenas served on Mr. Sinclair and Mr. Savage

but will allow the subpoenas served on Sokol and Frontier Mining. However, this Order is **stayed**, pending the resolution of the scope of the subpoenas. The Court will **reserve ruling** on the scope of the subpoenas until after the parties submit a joint status report on August 3, 2007.

Dated at Denver, Colorado, this 26th day of July, 2007.

BY THE COURT:

s/ Michael E. Hegarty
Michael E. Hegarty
United States Magistrate Judge