IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 06-cv-02575-MSK-KMT

In re:

APPLICATION OF MICHAEL WILSON & PARTNERS, LIMITED,
FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782.

---

**ORDER**

---

This matter is before the court on Michael Wilson & Partners Limited's ("MWP") Motion to Compel Further Discovery Responses" ("Mot.") [Doc. No. 100, filed November 24, 2008]. "Respondents' Opposition to Motion to Compel Further Discovery Responses" ("Rsp.") [Doc. No. 102] was filed on December 15, 2008 and MWP's Reply was filed on December 30, 2008 ("Reply") [Doc. No. 104]. Related to these proceedings and also considered by the court is the "Notice of Judgment" [Doc. No. 106] filed by the Respondents on February 2, 2009. The court has concluded that oral argument would not be beneficial and therefore the matter is ripe for review and ruling.

### *BACKGROUND*

The following synopsis of underlying facts is taken from the Order of Magistrate Judge Michael Hegarty dated July 27, 2007. [Doc. No. 37.]

> Petitioner Michael Wilson & Partners, Limited ("MWP") is an international law firm that is seeking discovery from former clients who have

> ended their business relationship with Petitioner in favor of one with a law firm comprised of Petitioner's former partner Mr. Emmott, and former associates, Messrs. Nicholls and Slater. Petitioner has instituted a lawsuit against Mr. Emmott in England seeking evidence related to Petitioner's claims against Emmott in private arbitration proceedings. Petitioner has also filed suit against Messrs. Nicholls and Slater in Australia alleging accessory liability for dishonest assistance, conspiracy to defraud, and breaches of fiduciary and contractual duties, including breaches of restrictive covenants and duties of confidentiality.
>
> Petitioner filed its Application for discovery pursuant to Section 1782 to obtain documents and deposition testimony from two former clients, Sokol and Frontier Mining, as well as the principal owners of these companies, Mr. Sinclair and Mr. Savage, respectively. The two companies are both Delaware corporations with principal places of business in Centennial, Colorado. Petitioner argues that Emmott diverted business from these clients away from MWP and to the firms and companies with which he is now associated. Petitioner contends that many of its clients compensate the firm for its legal work by giving the firm a stake in the underlying venture. Petitioner asserts that Emmott has received an interest in one project, the Max Petroleum project, and likely others, as a result of work he completed while still associated with MWP. Thus, Petitioner seeks documentation related to ten different ventures around the world in which Petitioner believes that an interest or compensation for the project has been diverted from MWP and to a company owned or controlled by Emmott, Nicholls, and Slater.
>
> District Judge Marcia S. Krieger granted Petitioner's Application under Section 1782, and MWP served subpoenas on Respondents in January and February 2007. Respondents objected to the subpoenas on various grounds, and after some months of conferring, Petitioner filed the instant Motion to Compel.

*Id.* at 1-2.

On October 31, 2007, Magistrate Judge Hegarty issued an Order clarifying the extent of allowable discovery, addressing matters subject to protective order, and addressed issues of cost sharing for the discovery to be produced. [Doc. No. 54.] That Order was appealed by both MWP and Respondents; however the Order was affirmed by the District Court on May 15, 2008.  On

March 5, 2009, the District Court declined to reconsider its Order but re-opened the case in order to provide a mechanism for review of the instant Motion and of the Notice of Judgment.

MWP seeks further discovery in this matter which it claims was either not provided by Respondents as required, or which was not complete. Respondents oppose producing any further documents, claiming they have fully complied with the subpoenas and have produced over 350,000 pages of discovery at a cost of "in excess of $2.5 million." (Rsp. at 6.) Respondents request that the court require MWP to post a bond in the sum of $1 million dollars to guarantee the payment of their share of the costs of discovery production as previously ordered by the Magistrate Judge and upheld by the District Court.

Respondents claim they entered into an agreement with MWP which would have obviated the need for ruling on MWP's Motion. Respondents claim MWP has breached the agreement. MWP agrees that a proposal to resolve the issues contained in the instant motion was made but asserts that agreement was never reached. The parties disagree about the terms of any agreement and, further, whether either party performed fully under the agreement. This court finds there was no meeting of the minds with respect to resolution of the discovery issues in this case and therefore the court will decide the merits of the pending discovery dispute.

MWP's requests can be broken down into five essential categories. MWP asserts: 1) the deposition testimony of respondents' Rule 30(b)(6) witness was inadequate and the deponent was not properly prepared and educated prior to the deposition; 2) the search for documents relevant to its discovery requests was inadequate and that a more thorough search should be made of respondents' files and records; 3) Respondents improperly withheld documents on the

basis of privilege; 4) the respondents' privilege log is inadequate; and 5) the production which was made was a "jumble" of documents which so impeded their ability to sort and review the documents that they should be compensated.

### *STANDARDS*

The documents and testimony to be produced in this matter are subject to the provisions of Title 28 U.S.C. § 1782, "Assistance to foreign and international tribunals and to litigants before such tribunals." Section 1782 provides, "To the extent that the order does not prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure." *Id.*

Fed. R. Civ. P. 45 governs documents and deposition productions from non-parties by subpoena. The scope of permissible discovery pursuant to Rule 45 is set forth in Fed. R. Civ. P. 26(b)(1), which provides, in part, that, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense – including the existence, description, nature, custody, condition, and location of any documents . . . ." Further, "for good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." *Id.; see also* Fed. R. Civ. P. 45(d) (1), Advisory Committee Note ("[t]he changes make it clear that the scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules.") Congress' clear intention was to more actively involve the court in limiting discovery to "the actual claims and defenses involved in the action." Fed. R. Civ. P. 26, Advisory Committee Note.

When non-parties are responding to discovery requests, courts consider the burden on the non-parties and apply, among others, the following factors in ruling on a Motion to Compel: relevance, the requesting party's need for the documents, the breadth of the document request, and the time period covered by the request. *Echostar Communications Corp. v. News Corp. Ltd.*, 180 F.R.D. 391, 396 (D. Colo. 1998). *See Cytodyne Tech., Inc. v. Biogenic Tech., Inc.*, 216 F.R.D. 533, 535 (M.D. Fla. 2003), citing *Farnsworth v. Proctor & Gamble Co.*, 758 F.2d 1545 (11th Cir.1985); *erinMedia, LLC v. Nielsen Media Research, Inc.,* 2007 WL 1970860, 1 -2 (M.D. Fla. 2007). The court has considerable discretion in the regulation of the discovery which is exchanged in a lawsuit, and the rules provide that the court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense. . . ." Fed. R. Civ. P. 26(c). Discovery from third-parties must, under most circumstances, be closely regulated. *Echostar* at 396.

## *ANALYSIS*

### *I.     Discovery*

#### *A.     Further Deposition of Rule 30(b)(6) Witness for Respondents*

The parties do not disagree that by Order of the English Arbitral Tribunal, the deposition to be taken of the non-party respondents' Rule 30(b)(6) designated representative was to be a "purely custodial deposition . . . strictly limited to issues relating to the Companies' possession of, custody of, or power over alleged documents." (Rsp. at 8.) The designated deponent was Brian C. Savage.

The procedure for taking an oral deposition of an organizational entity is governed by Fed. R. Civ. P. 30(b)(6) which provides:

> In its notice or subpoena, a party may name as the deponent a public or private corporation, a partnership, an association, a governmental agency, or other entity and must describe with reasonable particularity the matters for examination. The named organization must then designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on its behalf; and it may set out the matters on which each person designated will testify. A subpoena must advise a nonparty organization of its duty to make this designation. The persons designated must testify about information known or reasonably available to the organization.

*Id.*

Rule 30(b)(6) implicitly requires the designated entity representative to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition. *Heartland Surgical Specialty Hosp., LLC v. Midwest Div., Inc.,* 2007 WL 1054279, *3 (D. Kan. 2007). This interpretation is necessary in order to make the deposition meaningful. "Inadequate preparation of a Rule 30(b)(6) designee can be sanctioned based on the lack of good faith, prejudice to the opposing side, and disruption of the proceedings." *Starlight Int'l. v. Herlihy*, 186 F.R.D. 626, 639 (D. Kan. 1999); *Payless Shoesource Worldwide, Inc. v. Target Corp.*, 2007 WL 1959194, *1 (D. Kan. 2007).

While acknowledging that preparing for a Rule 30(b)(6) deposition can be burdensome, the scope of the inquiry here was substantially limited. However, it appears Mr. Savage engaged in little to no preparation for the deposition, even on the circumscribed topics to be covered. (Reply at 12, citing Savage Dep.) He was uninformed about such routine custodial information as employee document preservation and storage practices as well as the limitations of his own

electronic systems concerning document retention and retrieval. *Id*. A deponent does not fulfill its obligations at the Rule 30(b)(6) deposition by stating it has no knowledge or position with respect to a set of facts or area of inquiry within its knowledge or reasonably available. *Heartland*, *id*. The deponent was also not knowledgeable as to the framework of the search for documents which were produced as part of the discovery obligations under the subpoenas. This information is part of a document custodian's reasonable sphere of knowledge. See *Alexander v. F.B.I.*, 192 F.R.D. 37, 40 (D.D.C. 2000) (a deposition of a custodian of records may be taken in order to address concerns about the adequacy of the entity's search and compliance with a subpoena). The person who apparently directed and devised the search criteria for compliance with the subpoenas was Mr. Savage's agent; Mr. Savage, therefore, had a duty to know and understand the process sufficiently to provide meaningful information in his capacity as a Rule 30(b)(6) deponent. *Id*. at *4, 6-7 (corporations, partnerships, and joint ventures have a duty to make a conscientious, good-faith effort to designate knowledgeable persons for Rule 30(b)(6) depositions and to prepare them to fully and unevasively answer questions about the designated subject matter).

If designated persons do not possess personal knowledge of the matters to which they might expect inquiry, the entity is obligated to prepare the designees so that they may give knowledgeable and binding answers for the organization. *Starlight Intern. Inc. v. Herlihy* 186 F.R.D. 626, 638 -639 (D. Kan. 1999); *Sprint Communications v. Theglobe.com, Inc.,* 236 F.R.D. 524, 527 (D. Kan. 2006). "[I]f it becomes obvious during the course of a deposition that the

designee is deficient, the [organization] is obligated to provide a substitute." *Starlight, id.* (omitting internal citations).

Because the respondents are non-parties, MWP "must meet a burden of proof heavier than the ordinary burden imposed under Rule 26." *Echostar*, 180 F.R.D. at 394. "Courts are required to balance the needs for discovery against the burdens imposed when parties are ordered to produce information or materials, and the status of a person or entity as a non-party is a factor to be weighed. *Id.*, citing *American Standard Inc. v. Pfizer, Inc.*, 828 F.2d 734, 738 (Fed. Cir.1987). As noted, however, although the respondents are non-parties to the underlying litigation, it is undisputed that they are in many respects involved in the dispute and that the outcome of the litigation is of import to them. (Mot. at 2; Rsp., ftn. 1.)

Mr. Savage's lack of information concerning the production of documents pursuant to subpoena and the methods of searching, together with his lack of information concerning the normal document retention policies of the company, the location and source of documents and other information which fall under the custodial rubric is an obvious failure to properly prepare for the Rule 30(b)(6) deposition.[1]

---

[1] MWP also complained that repeated instructions not to answer a deposition question were given to Mr. Savage by his counsel. In general, instructions to a deponent not to answer a question are proper only to assert a recognized, applicable privilege. Instructions to the deponent not to answer a question on other grounds are considered an abuse of discovery. If respondents considered MWP's questioning to be beyond the scope of a the foreign tribunal's directives, the proper procedure would have been to request an emergency hearing before this court.

Therefore, MWP shall be allowed to take a further deposition of Mr. Savage or another <u>fully and completely prepared</u> Rule 30(b)(6) representative. All fees and costs associated with the taking of this deposition will be borne by the respondents since it is their original failure to prepare the designated witness which necessitates the need for additional questioning.[2]

### B.   *Adequacy of Search for Documents*

MWP also claims the respondents did not search several key areas of their business where responsive documents could have been expected to be located. (Mot. at 17, *et seq.*) In particular, MWP claims that more than just two laptop computers should have been searched. In particular, MWP requests that the court compel the respondents to conduct a search of the computer of employee Alexandra Timofeeva, as well as company computer storage devices and additional computers belonging to Mr. Savage and Mr. Sinclair.

Mr. Savage's deposition testimony indicates that many of the firm's banking, accounting and shareholder records could be expected to reside on the Timofeeva computer. (Reply at 15.) Further, Mr. Savage testified that electronic storage devices were in existence at the time of the

---

[2]Magistrate judges have the power to award attorney fees as non-dispositive discovery sanctions under 28 U.S.C. § 636. *Hutchinson v. Pfeil*, 1999 WL 1015557, 2 (C.A.10 (Okla. (C.A.10 (Okla.),1999); *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1465 (10th Cir.1988) (finding district court appropriately applied clearly-erroneous or contrary-to-law standard in reviewing magistrate judge's imposition of non-dispositive discovery sanction); *GWN Petroleum Corp. v. OK-Tex Oil & Gas, Inc.*, 998 F.2d 853, 858 (10th Cir.1993) (applying abuse-of-discretion standard to district court's discovery rulings).

search and that documents and other information were saved on CDs, USB drives and other devices. (Reply at 16.)

As to the additional computers belonging to Mr. Savage and Mr. Sinclair, the respondents state that the two laptop computers which were searched were the only two computers belonging to Savage and Sinclair "at the time the subpoenas were <u>served</u>." The operative time period pertaining to whether Savage/Sinclair later acquired computers should have been searched is whether the computers were in existence at the time of the <u>response</u> to the subpoenas. *See erinMedia, LLC* at *4.[3]

Auxiliary hard drives, zip drives, USB devices, CD's and other electronic storage devices essentially perform the same function as did a file cabinet in the pre-electronic era. Therefore, the respondents have an obligation to search all such storage devices for relevant documents just as they would have had to do had all the information been printed out and stored in hard copy format. The fact that duplicate documents may have been stored and maintained in more than one place is irrelevant to the duty to search all locations where responsive documents might be found. Again, this duty is to search the electronic storage devices is specifically limited to the time period immediately prior to the respondents original response to the subpoenas.

It is likely that the Timofeeva computer was the repository of a large number of documents with the potential of being relevant and responsive to the subpoenas issued by MWP.

---

[3] The court agrees with respondents that there is no "continuing duty" to respond to a Rule 45 subpoena. The respondents herein are not parties to this litigation and their duty is to respond fully and completely to the subpoenas at the time the response is provided.

That computer, as well as all other storage devices, and any other computers used by Mr. Savage or Mr. Sinclair prior to the date of the search, should have been part of the search parameters. Therefore, a further search and production by the respondents consistent with this Order is warranted.

### C.     *Privilege and Contents of Privilege Log*

Discovery procedures set forth in the Federal Rules of Civil Procedure seek to further the interests of justice by minimizing surprise at trial and ensuring wide-ranging discovery of information. *S.E.C. v. Nacchio*, 2007 WL 219966, *4 (D. Colo. 2007). To that end, Rule 26(b) permits discovery "regarding any <u>nonprivileged</u> matter, that is relevant to any party's claim or defense" or discovery of any information that "appears reasonably calculated to lead to the discovery of admissible evidence." See Fed. R. Civ. P. 26(b)(1) (emphasis added). The party resisting discovery on grounds of privilege or the work product doctrine bears the burden of coming forward with facts that would sustain their claim. *Nacchio* at 4; *Cf. Resolution Trust Corp. v. Heiserman*, 151 F.R.D. 367, 373 (D. Colo. 1993).

By excluding "privileged" information from the broad parameters of pretrial discovery, Rule 26 attempts to strike a balance between conflicting interests. Privileges further the administration of justice and "should not be set aside lightly." *See Horton v. United States*, 204 F.R.D. 670, 672 (D. Colo. 2002); *McNeil-PPC, Inc. v. Procter & Gamble Co.*, 138 F.R.D. 136, 138 (D. Colo. 1991). However, privileges also have the effect of withholding relevant information from the finder of fact, and for that reason should be narrowly construed. *See Montgomery v. Leftwich, Moore & Douglas*, 161 F.R.D. 224, 225 (D.D.C. 1995). For the same

reason, the party withholding information on the basis of privilege must make <u>a clear showing</u> that the asserted privilege applies and must establish all elements of the privilege. *National Union Fire Ins. Co. of Pittsburgh v. Midland Bancor, Inc.*, 159 F.R.D. 562, 567 (D. Kan. 1994). *Cf. McCoo v. Denny's Inc.*, 192 F.R.D. 675, 683 (D . Kan. 2000) (the party invoking a privilege must establish all elements of the doctrine through an evidentiary showing based on competent evidence; "the burden cannot be discharged by mere conclusory or ipse dixit assertions."); *Resolution Trust Corp. v. Dabney*, 73 F.3d 262, 266 (10th Cir. 1995) ("a mere allegation that the work product doctrine applies is insufficient").

The Federal Rules of Civil Procedure require that where a party withholds otherwise relevant information by claiming it is privileged or subject to protection as trial preparation material, that party "shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that . . . will enable other parties to assess the applicability of the privilege or protection." See Fed. R. Civ. P. 26(b)(5). In the typical case, a Rule 26(b)(5) privilege log will individually list withheld documents and provide pertinent information for each document. *Nacchio* at 9-10. In this case, the respondents have produced such a log. However, MWP argues that the log is both inadequate and incomplete and does not provide enough information to object to the privileged designation if appropriate.

The Tenth Circuit has stated

> A party seeking to assert [a] privilege must make a clear showing that it applies. Failure to do so is not excused because the document is later shown to be one which would have been privileged if a timely showing had been made. . . . The applicability of the privilege turns on the adequacy and timeliness of the showing as well as on the nature of the document.

*Peat, Marwick, Mitchell & Co. v. West*, 748 F.2d 540, 542 (10th Cir.1984). *See also Atteberry v. Longmont United Hosp.,* 221 F.R.D. 644, 649 (D. Colo. 2004).

The parties did not provide the court with the actual 124 page privilege log. The court has, however, reviewed the 52 page subset of the log MWP claims contains listings for which inadequate grounds supporting privilege designation has been provided. (Mot., Exh. 11, Att. A, p. 9; Reply at 18) (hereinafter "Log Objections"). Based upon the entries in the Log Objections the court agrees with MWP that, at least with respect to those entries, the privilege log is inadequate to accomplish the purpose of a privilege log. In many cases the documents described in the logs are missing vital information including the sender and the recipient (including information about whether one or the other is an attorney) and the date of the document. Also, on many of the entries, the "subject" (which should be a description of the document) does not in any manner indicate why such a document should be privileged. A prime example is Log Objection entry number 45782. The date on the document is "7/31/2006" with no author or recipient listed, described as "Presentation for phosphate project." The document is classified as "Attorney-Client." There is no attorney listed anywhere with respect to the document and the description would indicate that the document, a "presentation," was something shared with a group.

Not all entries on the Log Objections are as deficient as 45782; however, all entries are deficient in that a meaningful examination and determination regarding the privileged designation cannot be made on the basis of the scant information provided.

Therefore, the respondents will be required to supplement the privilege log with respect to the entries on MWP's Log Objections to provide sufficient information about each document to enable meaningful review by MWP. Alternatively, the respondents may remove the document from the privilege log and forthwith provide a copy of the document to MWP in supplemental discovery.

Related to the deficiencies in the privilege log, MWP also claims they are entitled to production of invoices issued to respondents by the Temgin/Shikemov Companies and other similarly situated documents. The respondents claim that these invoices are privileged from production.

Just because a document not otherwise privileged contains some information arguably subject to privilege does not render the whole document protected. *Sequa Corp. v. Lititech, Inc.*, 807 F. Supp. 653, 660 (D. Colo. 1992). With respect to invoices, for instance, which are generally not privileged, the respondents may redact privileged information and should produce the redacted copies. See, e.g. Fed. R. Civ. P. 26(b)(3), Advisory Note 1970, ("[i]n enforcing [the Rule 26(b)(3) protection of work product material], the courts will sometimes find it necessary to order disclosure of a document but with portions deleted."); *Heavin v. Owens-Corning Fiberglass*, 2004 WL 316072, *6 (D. Kan. 2004). Therefore, the respondents may appropriately redact the requested invoices, supplement the privilege log as to any redactions made and are ordered to produce the redacted documents in supplemental discovery.

On the issue of communications between respondents and the foreign defendants while the foreign defendants worked for MWP, respondents represent that all such documents have

been produced. Again, a more detailed privilege log as Ordered herein should identify any remaining issues with respect to these communications.

### D.     *Manner of Physical Production.*

MWP argues that since there was a voluminous number of documents produced in response to the subpoenas and the documents were not in any prescribed or intelligible order, a substantial burden was placed on MWP to organize and categorize the documents received. MWP does not request that this court order the production to be organized or indexed by respondents, however. They ask, instead, that they not be required to share in the substantial costs for producing all documents relevant to their own discovery requests. The court is not so inclined. If MWP wanted relief from the burden of organizing the material they had requested, there was no obstacle to requesting it at a time when it could have meaningfully been given. Since they did not, MWP's complaints regarding the organization, or lack thereof, of the documentation produced have been waived.

### II.     *Bond to Cover Costs.*

In *Paramount Film Distributing Corp. v. Civic Center Theatre*, 333 F.2d 358, 362 (10th Cir.1964), the Tenth Circuit determined that the decision whether to require a pre-judgment cost bond in federal court is within the trial court's discretion. Factors which may be considered in determining whether to grant a motion requiring posting of a cost bond include: (1) the merits of MWP's claims; (2) the ability or willingness of MWP to pay costs as awarded or agreed to; and (3) the substantial costs which are being incurred by respondents to comply with the document

production. *Hartnett v. Catholic Health Initiatives Mountain Region,* 47 F. Supp. 2d 1255, 1256 (D. Colo. 1999); *Piallat v. Replogle*, 125 F.R.D. 165, 166 (D. Colo. 1989).

The Colorado state court rule is to require a cost bond in cases such as this. *Radoshevich v. Central Bank of Colorado Springs,* 117 F.R.D. 434, 435 (D. Colo. 1987). Colorado Revised Statutes 13-16-102 provides the Court may require a cost bond from non-residents if "satisfied that any plaintiff is unable to pay the costs of suit, or that he is so unsettled as to endanger the officers of the court with respect to their legal demands." *But see, Piallat, id.*, (federal court has discretion whether to request posting of bonds and is not required to follow state statute).

The court finds that whether the court applies Colorado or federal law, a cost bond may be appropriate when the claims presented are of dubious merit, the plaintiff lacks financial responsibility, or the defendant will incur substantial expense. *Id. See Hardwoods, Inc. v. Universal Oil Products*, 493 F. Supp. 76, 77 (W.D. Mich. 1980).

It is undeniable that production of 350,000 pages of discovery in this matter for the non-parties has been voluminous and expensive. The respondents state that the cost of production to date is in excess of $2.5 million. (Rsp. at 6.) MWP alleges that a significant portion of the skyrocketing costs of compliance with the subpoenas was a direct result of "respondents' own counsel's mis- and mal-feasance." (Reply at 25.) MWP alleges that a refusal on the part of respondents to consult with MWP regarding search term protocols resulted in a waste of resources spent manually searching "a large number of directories. . . ." (Reply at 26.) Since a sharing of the costs has been ordered in this case, these allegations will undoubtedly rise again.

This case is intertwined with several foreign adjudications. There is no evidence before the court that MWP is unable to pay its share of costs in this matter. However, in the underlying matter proceeding in the High Court of Justice, Queen's Bench Division in the proceeding in England captioned *Emmott v. Michael Wilson Partners, Limited*, Case No. 2008 Folio 1300, the court has entered a judgment freezing certain assets of MWP, precluding MWP from disposing of, assigning or diminishing the value of the asset. (Notice of Judgment, Doc. No. 106 at 1-2.) Respondents represent that the court took this action because "[t]he Court in this foreign proceeding is concerned that MWP will dispose of this disputed property and is thus attempting to safeguard it. Since MWP had previously failed to comply with the Arbiters' order seeking to protect these assets, the High Court is forced in this Judgment to enforce the Arbiter's peremptory order and freeze those assets." *Id.* In this part of the international litigation the stage is obviously set for MWP to protest their share amount of the costs incurred in responding to the subpoenas and it does not appear that MWP has made any payment on their share to date.

Under all the circumstances of this case, the court agrees that, since further disputes over the amount of costs appear inevitable, a bond to cover MWP's share of the costs as previously ordered is appropriate and advisable.

Wherefore it is ORDERED:

Michael Wilson & Partners Limited's Motion to Compel Further Discovery Responses [Doc. No. 100] is GRANTED in part as follows:

1. MWP shall be allowed to take a further deposition of Mr. Savage or another fully and completely prepared Rule 30(b)(6) representative. All fees and costs associated with the taking of this deposition will be born by the respondents.

2. The respondents shall institute a search of the Timofeeva computer as well as all auxiliary hard drives, zip drives, USB devices, CD's and other electronic storage devices which were in existence at the time of original compliance with the subpoenas, for documents which comply with the requests in the subpoenas. The search shall be limited to the documents and other data which was in existence prior to the date the original responses were submitted to MWP.

3. Respondents shall update and supplement their privilege log in accordance with the directives in this Order and shall submit the updated log to MWP on or before May 11, 2009.

4. MWP shall post a cost bond in the amount of one million dollars with the Clerk of the U.S. District Court, District of Colorado on or before May 11, 2009.

Dated this 30th day of April, 2009.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge