IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-02575-MSK-KMT

In re:

APPLICATION OF MICHAEL WILSON & PARTNERS, LIMITED,
FOR JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782.

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This matter is before the court on "Respondents' Motion for Reimbursement of Costs and Fees" [Doc. No. 181] ("Mot.") and Brief in Support [Doc. No. 182] ("Mot.Br."). "Petitioner's Opposition to Motion For Reimbursement of Costs and Fees" ("Resp.") was filed on November 7, 2011 [Doc. No. 185] and the "Reply Memoranudm (sic) of Law in Further Support of Respondents' Motion for Reimbursement of Costs and Fees" [Doc. No. 186] ("Reply") was filed November 23, 2011. Fed. R. Civ. P. 54(d)(2)(D) provides that a referral to a Magistrate Judge of an attorney's fees dispute requires that the referral be treated like a dispositive matter. Therefore, the matter is ripe for review and recommendation to the District Judge Marcia S. Krieger.

*Procedural History*

Petitioner Michael Wilson & Partners, Limited ("MWP") is an international law firm that has been, over the past six years, seeking discovery from its former clients who have ended their business relationship with Petitioner in favor of one with a law firm comprised of Petitioner's

former partner Mr. Emmott, and former associates, Messrs. Nicholls and Slater.  When Respondents were clients of MWP they allegedly worked together in developing certain projects. MWP alleges against Emmott, *et al.*, in certain foreign proceedings that the potential profit from those projects was improperly diverted from MWP to Emmott's competitor firm(s).  MWP instituted a lawsuit against Emmott in England seeking evidence related to Petitioner's claims against Emmott in private arbitration proceedings.  MWP also filed suit against Nicholls and Slater in Australia, alleging accessory liability for dishonest assistance, conspiracy to defraud, and breaches of fiduciary and contractual duties, including breaches of restrictive covenants and duties of confidentiality.

Petitioner filed its Application for discovery pursuant to 28 U.S.C. § 1782 to obtain documents and deposition testimony from its two former clients, Sokol and Frontier Mining, as well as the principal owners of these companies, Thomas Sinclair and Brian Savage, respectively.  The two Respondent companies are both Delaware corporations with principal places of business in Centennial, Colorado.

Petitioner's claimed losses in the foreign proceedings are based on allegations that Sokol and Frontier Mining, having previously agreed to compensate MWP for its legal work by giving the firm a stake in their underlying ventures, have broken this promise.  Petitioner asserts that Emmott has received an interest in one project in particular, the Max Petroleum project, as well as others, as a result of work Emmott completed while still associated with MWP.  This interest in Max Petroleum allegedly would have inured to the benefit of MWP if not for Emmott's interference  Thus, Petitioner seeks documentation related to ten different ventures around the

world in which Petitioner believes that an interest or compensation for the project has been diverted from MWP to Emmott controlled entities.

MWP served subpoenas on Respondents in January and February 2007. Respondents objected to the subpoenas on various grounds, and after some months of conferring, Petitioner filed a Motion to Compel. Magistrate Judge Hegarty issued rulings with respect to the motion on July 27, 2007, allowing discovery under 28 U.S.C. § 1782 and stating

> the Court determines that some discovery is appropriate. First, although Mr. Sinclair is a party in a related proceeding in the Bahamas, neither corporation is a party in that action, and the information is not sought for use in the Bahamian proceedings. Despite Respondents' promises to cooperate in the foreign proceedings, none of the Respondents are subject to the jurisdiction of either the English or Australian courts, for which this discovery sought.

[Doc. No. 37 at 5.]

On or about July 13, 2007, the respondents set forth an estimate of the cost of full compliance with the discovery requests set forth in the subpoenas. (*See* Declaration of Matthew John Blower [Doc. No. 20]("Blower Declaration").) Respondents represented, "[t]he potentially responsive data on the laptops of Mr. Sinclair and Mr. Savage amounts to over 10,000 electronic documents and over 90,000 email files (including attachments)." (*Id.* at ¶ 2.15.) Mr. Blower represented that Sokol and Frontier Mining's email server's "total data size is 40 gigabytes and it is believed that there could be as many as 36,000 potentially responsive email documents (including attachments) on the server." (*Id.* at ¶ 2.16.) Mr. Blower stated

> Once these electronic documents and emails have been processed according to search terms to be agreed and de-duplicated, they will need to be reviewed by counsel for privilege. It is nearly impossible to predict exactly how large this task will be but based on the starting point of approximately 126,000 email documents

> and 10,000 electronic documents, I consider that a review rate of approximately 100 documents per hour by a junior associate rate of $225 U.S. dollars per hour is reasonable. At that rate, the exercise could cost *as much as* $300,000.00 U.S. dollars.

*Id.* at ¶2.17 (emphasis added). Given the construction of the sentence, the $300,000 figure was obviously Mr. Blower's outside highest figure for the cost of compliance with the subpoenas from the Respondents. Respondents' counsel confirmed the estimate during the hearing on July 20, 2007. (*See* Transcript, Motions Hearing July 20, 2007 [Doc. No. 38] at 51:5-17), but conceded that review of every document in electronic storage might be "an overexpansive view of what was going to be necessary in terms of the production." (*Id.* at 52:16-18.)

Magistrate Judge Hegarty required the parties to meet and confer over the issue of costs of compliance with the subpoenas and directed the parties to file a status report setting forth any agreements. Ultimately, on August 17, 2007, the parties informed the court that they were unable to agree on the issue of responsibility for costs and fees associated with Respondents' production. [Doc. No. 46.] On October 1, 2007 Respondents advised the court

> MWP has agreed to reimburse Respondents' reasonable copying costs, however it has not agreed to pay attorney's fees on the basis that MWP does not believe such payment is justified under Rule 45, Fed. R. Civ. P., and interpreting case law. Specifically, MWP asserts that Respondents are not unrelated third parties, but rather have a direct financial interest in the foreign proceedings, and, moreover, because Respondents have considerable wealth relative to MWP, they would not be unreasonably burdened by complying with the subpoenas, particularly given MWP's agreement to narrow their scope.

[Doc. No. 49.] MWP confirmed this representation in their own status report filed October 15, 2007. [Doc. No. 52.] On October 31, 2007, Magistrate Judge Hegarty issued rulings with respect to the scope of the subpoenas and the Court's jurisdiction and, as to costs and fees, held

4

> While the Court will not set forth parameters at this time, Petitioner should be
> prepared to share equally the cost of imaging, preserving, searching, and
> producing the requested documents. The Court, however, does not believe that an
> award of attorney's fees for document review is appropriate in this case,
> particularly given Respondents' position that they are already participating parties
> in some of the foreign proceedings, as well as their obvious interest in the
> outcome of these foreign proceedings.

(October 31, 2007Order [Doc. No. 54] at 6.)  Magistrate Judge Hegarty's order was appealed by both sides and, in particular, "the Respondents object[ed] to the Magistrate Judge's Order . . . which denied them any recovery for attorney fees."  (Order of District Judge Marcia S. Krieger, May 15, 2008 [Doc. No. 85] at 2.)  Judge Krieger upheld Magistrate Judge Hegarty's order in all respects, including specifically the ruling banning recovery for attorney fees.  *(Id.* at 3.)  A motion for reconsideration of the District Court's Order was unsuccessful.  (*See* Order Denying Motion for Reconsideration [Doc. No. 108] filed March 5, 2009.)  Between the time of Magistrate Judge Hegarty's October 31, 2077 Order and District Judge Krieger's first affirmation, the case was reassigned to the undersigned Magistrate Judge.

MWP filed another Motion to Compel on November 24, 2008.  [Doc. No. 100.]  Respondents opposed producing any further documents, claiming they had fully complied with the subpoenas and had produced over 350,000[1] pages of discovery at a cost of "in excess of $2.5 million." [Doc. No. 102 at 6.]  Respondents requested that the court require MWP to post a bond in the sum of $1 million dollars to guarantee the payment of their equal share of the costs of production as previously ordered by Magistrate Judge Hegarty.  On April 30, 2009, this court

---

[1] In a later pleading, Respondents asserted they had "reviewed" 350,000 pages of material and had actually electronically produced over 15,000 pages.  [Doc. No. 170 at 3.]

5

issued an finding that Respondent Savage had been inexcusably unprepared for his deposition by MWP and required Respondents to bear the costs associated with a continued deposition. [Doc. No. 109 at 9.] Although the court found largely in favor of MWP on the remaining issues contained in the Motion to Compel, the court did not relieve MWP from the burden of cost sharing with respondents for compliance with the subpoena. (*Id.* at 15.) Further the court ordered MWP to post a cost bond in the amount of $1 million to cover its share of the production burden, noting, "The respondents state that the cost of production to date is in excess of $2.5 million." Although MWP alleged that a significant portion of the skyrocketing costs of compliance with the subpoenas was a direct result of Respondents' own counsel's mis- and mal-feasance,[2] MWP was ordered to have the bond posted by May 18, 2009. [Doc. No. 118.] On May 18, 2009 MWP appealed the court's requirement of the $1 million bond, requested a stay from the District Court, but did not post the bond as ordered, nor tender any payment to Respondents as a share of the costs of production. (June 8, 2010 Order [Doc. No. 141] at 3.)

On December 29, 2009, MWP filed a motion for an order to show cause alleging Respondents had failed to comply with the April 30, 2009 Order. [Doc. No. 126.] At that time the District Court had neither granted a stay as to the directive to MWP to post a cost bond nor had the appeal of the April 30, 2009 order been addressed. Therefore, MWP, by failing to post the bond as ordered, was itself in direct noncompliance with the April 30, 2009 Order. On June

---

[2] Unbeknownst to the court at that time, MWP's allegations came to be shared by respondents as well who have sued their former counsel for exactly this alleged behavior.

8, 2010, this court found that Respondents had fully complied with the April 30, 2009 order and thereafter issued an order to show cause against MWP. [Doc. No. 141 at 6.]

After further briefing and argument, on July 14, 2010, this court re-affirmed its previous orders respecting the posting of security by MWP for its production cost share, but found "that the costs which may potentially be assessed against Petitioner in connection with production pursuant to the subpoenas at issue is unlikely to exceed $500,000.00" and allowed MWP to post alternate security in lieu of the one million dollar cost bond. [Doc. No. 147/148.] On July 23, 2010 MWP filed a "Renewed and Supplemented Objection to the April 30, 2009 Order of the Magistrate Judge Requiring the Posting of a Cost Bond" which was still pending before the District Court. [Doc. No. 155.]

The District Court affirmed the April 30, 2009 Order as amended and denied the request for a stay on August 15, 2011. [Doc. No. 173.] MWP appealed the District Court's order to the Tenth Circuit Court of Appeals on September 13, 2011. [Doc. No. 175, Notice of Appeal.] This appeal remains pending.

Based on the "Notice" filed by MWP on December 15, 2011, it appears the parties continue to do battle around the globe in several pending matters, some of which are currently on appeal.

Before the court at this juncture is whether sharing of costs and/or attorney fees with respect to the costs of Respondents' compliance with MWP's Rule 45 subpoenas is justified and, if so, what that amount should be. Noteworthy is that although Respondents make reference to remarks made by this court during various hearings to the effect that this court had not yet

specifically determined the propriety of awarding fees and costs nor what proportionality, if any, should be used, Magistrate Hegarty's October 31, 2007 Order finding against an award of attorney fees in this matter has not been substantively re-visited or overruled, but rather stands specifically affirmed by the District Court. Squarely before this court, then, is a determination of the amount of reasonable costs expended by Respondents in complying with the subpoenas and whether events subsequent to Magistrate Judge Hegarty's early ruling have caused the court to reconsider the propriety of recommending an award of some amount of reasonable attorney's fees to the respondents to defray the costs of compliance.

### *Legal Standards*

It is the Court's obligation to protect any person who is not a party to the underlying lawsuit from significant expense resulting from the inspection and copying which was commanded pursuant to Rule 45. *R. J. Reynolds Tobacco v. Philip Morris, Inc.*, 29 F. App'x 880, 882–83 (3rd Cir. 2002)(an award of recompense for significant expenses is mandatory under the Rule); *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C. Cir. 2001) (The "court must protect the nonparty by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'nonsignificant.' "). Rul3 45(c)(1) of the Federal Rules of Civil Procedure provides

> (c) Protecting a Person Subject to a Subpoena.
> > (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.

*Id.* The Rule further provides

> (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises--or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
>> (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
>> (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Fed. R. Civ. P. 45(c)(2)(B)(ii).

Such protection, however, does not necessarily mean that the requesting party must bear the entire cost of compliance. *Linder,* 251 F.3d at 182. The court, in determining to what extent costs should be shifted, shall consider (1) whether the nonparty has an interest in the outcome of the case; (2) whether the nonparty can more readily bear its costs than the requesting party; and (3) whether the litigation is of public importance. *Id.* (citations omitted). Cost shifting is not limited to costs of inspection and production, but those "significant expenses resulting from the inspection and copying." *Klay v. All Defendants*, 425 F.3d 977, 983–84 (11th Cir. 2005).

Respondents have produced, according to their submissions, approximately 15,000 documents (all in electronic format), reviewed prior to production over 325,000 documents, and have produced a single Rule 30(b)(6) witness for deposition. [Doc. No. 170, Memorandum of Law in Support of Respondents' Motion to Close Proceedings, at 3.]

### A. *Attorney Fees*

Complicating the court's analysis with respect to reasonable costs of subpoena compliance in this case, Respondents have sued their former attorneys Dorsey & Whitney ("Dorsey") in a 2008 Delaware case claiming

> Dorsey's unreasonable legal bills were caused by a an [sic] intentional plan to churn its bill and milk Sokol for the highest amount of attorneys' fees possible, combined with gross errors in judgment and strategy, inattention and neglect, glaring mistakes, a failure to alter its strategy and methods based on developments in the 1782 action, poor communication with its client, and indifference to all of the above.

(*See*, Resp., Ex. 3 at 2)(citations omitted).) Such a statement does much to bolster the confidence which might be placed in Mr. Blower's early estimate of $300,000.00 as the costs for Respondents to respond to MWP in the Section 1782 proceedings. According to the submissions of MWP, Respondents' own expert has opined in the Delaware case,

> Dorsey is right in arguing that the 100% manual review [of the Respondents' universe of documents] caused a substantial portion of the more than $2.5 million ultimately incurred. Dorsey is wrong, however, in contending that the 100% manual review was caused by MWP's refusal to agree to the use of search terms. In fact Dorsey's decision was based on its own mistaken belief that the "hit rate" for the search terms that it solely proposed was 90%, when the actual hit rate was much less. Or as MWP's counsel put it, "this costly decision [to perform a 100% manual review], like so many others, was made by respondents and their counsel alone. Therefore, the resulting expense, whether disproportionate or not, cannot be attributed to MWP."

(Resp., Ex. 4 at 22.)

In fact, in the Delaware proceeding, Respondents have represented to the Court that a reasonable cost for the document production in this Section 1782 proceeding would be only $571,187.00, including attorneys' fees. (Resp., Ex. 3 at 5.) Nevertheless, the Respondents have

10

asked this court to award fees and costs to them from MWP of $2,151,053.00. (*See* Proposed Order Granting Respondents' Motion for Reimbursement of Costs and Fees [Doc. No. 181-1].)[3]

As noted throughout this Recommendation, Respondents are not strangers to the worldwide litigation being pursued between MWP and Emmott. In fact, Mr. Sinclair is a named defendant in one of the proceedings. When Respondents, former clients and partners of MWP in various ventures, took their business to Emmott and his associates, they surely must have anticipated that MWP would attempt in some manner to recoup the lost venture revenues. Clearly, too, they put themselves in the position of indispensable witnesses at the very least.

Nothing that has transpired since Magistrate Judge Hegarty's order convinces this court that Respondents should be awarded attorneys' fees in connection with production of materials relevant to the various litigations which have been ongoing these many years and in which Respondents play a pivotal role. Taken together with the fact that even Respondents agree that the amount of attorney fees they have been billed by Dorsey and & Whitney is some two and a half million dollars above a reasonable level (Resp., Ex. 3-5.), the court declines to recommend

---

[3] To be sure, in their Reply, Respondents state, "Respondents do not ask this court to impose the full amount billed by Respondents' former counsel for such work. Instead, Respondents ask that MWP be held responsible for the reasonable amount of such fees and costs, as determined by the Delaware court in its ultimate decision regarding the precise amount that reasonably falls into each category. When the Delaware court rules, the precise amount that must be reimbursed by MWP will then be known." (Reply at 1-2.) However, they did not withdraw their proposed order. Since this court is recommending that no attorney fees be awarded to the Respondents in connection with this motion, the Delaware court's ultimate decision is of limited relevance.

an award to Respondents of any share of the attorneys' fees incurred in responding in this Section 1782 litigation.

### B. Costs

The party seeking an award of costs bears the burden of showing the necessity of the costs incurred. *Crandall v. City and County of Denver, Colo.,* 594 F. Supp. 2d 1245, 1247 (D. Colo. 2009); *Allison v. Bank One–Denver*, 289 F.3d 1223, 1248–49 (10th Cir.2002). The party seeking costs also "bear[s] the burden of providing . . . sufficient information and supporting documentation to allow . . . a reasoned decision for each cost item presented." *Grynberg,v. Ivanhoe Energy, Inc*., Case No. 08-cv-02528-WDM-BNB, 2011 WL 3294351, at *10 (D. Colo. Aug. 1, 2011) (citations omitted).

Respondents' costs summary is broken out between costs incurred during Dorsey's representation of Respondents and costs incurred during representation by Marcus & Auerbach ("M&A"). (Mot.Br. at 3–4.)

Dorsey commissioned the creation and maintenance of a sophisticated and expensive database of Sokol's electronically stored documents so that search terms and keywords could be used to eliminate the bulk of unresponsive documents from the necessity of later manual review. KPMG initially billed Respondents $715,629.00 for these services and equipment. (Mot. Br., Declaration of Brian Savage [Doc. No. 182-1] at 1–2.) However, after Respondents paid KPMG $194,113.00 (*id*.), M&A then expended $80,984.00 in legal fees negotiating a reduction with KPMG. (*Id.*) KPMG ultimately agreed to and accepted an additional $231,210.00 as payment in full for a total to KPMG of $425,323.00. (*Id*.)

Petitioner argues that it should not bear any part of this database expense because Respondents "abandoned the use of search terms and undertook a full manual review of all of Sokol's documents because it erroneously thought that the search terms would only eliminate 10% of the documents, when actually it would have eliminated 35% to 55% of the documents." (Resp, Ex. 3, at 3.) However, electronically organizing what later turned out to be more than 350,000 documents originally stored on several different computers and servers to facilitate full and accurate production compliant with Petitioner's subpoenas is a legitimate expense intended to benefit both parties in document retrieval.[4] The Respondents, prior to receiving the broad subpoenas from MWP had no need or desire for such a database. The court will allow the costs paid to KPMG of $425,323.00. The court will not allow the fees charged by M&A to reduce KMPG's bill to a more reasonable amount; the Respondent is at fault for hiring a company and entering into an unreasonable compensation agreement in the first instance. Although Petitioner benefits by the reduction as well as Respondents, this court would not likely have considered the initial $715,629.00 price tag to have been reasonable in any event and a reduction by court order would have worked primarily to Respondents' detriment.

Respondents next claim costs of $989,131.00 to hire reviewers, including outside attorneys and paralegals, to parse through 350,000 documents potentially responsive to Petitioner's subpoenas. Petitioner's argue, as noted above, that insufficient and incompetent usage of the KPMG system resulted in far too many documents being identified as potentially

---

[4] The costs associated with abandoning the database capabilities and undertaking a massive manual review are addressed *supra*.

responsive to the Section 1782 subpoenas and resulted in a disproportionate cost for manual review.  This court's recommendation to allow the costs for implementation of a sophisticated database system specifically recognizes the value of such a system to lessen the burden of manual review.  It is obvious to the court, by the costs associated with manual review, that the attorneys utilizing the KPMG system did not properly utilize its capabilities.  The Petitioner should not be required to share in the costs associated with such lack of skill since Petitioner had no control over the hiring of Dorsey by Respondents.

Further, Magistrate Judge Hegarty specifically ordered,"[t]he Court, however, does not believe that an award of attorney's fees *for document review* is appropriate in this case, particularly given Respondents' position that they are already participating parties in some of the foreign proceedings, as well as their obvious interest in the outcome of these foreign proceedings."  (October 31, 2007 Order at 6)(emphasis added).  Interestingly, Respondents have focused on the phrase "an award of attorney's fees" rather than on the directive "for document review" to justify hiring non-attorneys to perform the document review instead of Dorsey associates.  This court reads Magistrate Judge Hegarty's order to ban recovery of any costs, including wages in any form, associated with time spent for individuals to perform manual document review; not as a ban simply on Dorsey attorneys (or attorneys in general) from recovering fees for such work.  Therefore, for all the reasons set forth herein, the court recommends that no allowance or cost sharing be made for costs of contract attorney/paralegal/other reviewers associated with review of documents prior to production.

Given the time it took Respondents to organize and review the documents for production, the court finds the following additional costs to be reasonable and allowable: fax: $27.50; conference calls: $1,352.77; long distance calls: $306.31; after hours secretary: $62.50; anti-virus scan: $45.00; and, electronic bates numbering: $55.88. The court does not find reasonable or necessary the claimed costs for 'messenger' totaling $947.64 or for 'overnight delivery' amounting to $1,795.73, both submitted without any explanation at all why such high expenses were necessary or over what time and in what amounts the costs were accrued. Further, the parties are not in disagreement that approximately 15,000 pages of documents were *electronically* delivered to MWP in response to the subpoenas. [Doc. No. 170 at 3.]

Why the Respondents allegedly incurred a photocopy expense of $42,846.27 is neither explained nor is it facially obvious to the court, especially in light of the court's allowance of almost a half million dollars to KPMG to put Sokol's electronic documents into a database for searching and production. To the extent Respondents needed printed versions of the documents for some reason, the expense of printing was for Respondents' benefit only. Petitioner should not be obligated to pay for "copy" charges when printed copies were neither produced nor requested. Given that the production of documents to Petitioner was electronic, the court also does not agree with Respondents' request to be reimbursed for shredding costs of $225.00 under the same rationale.

This court finds expenses for working meals of $249.01, unspecified after hours labor charges of $3,420.00 and after hours HVAC of $11,503.81 are also expenses incurred as a result

of Respondents' choice in how it worked to satisfy its production obligations and are not compensable.

Further, there has been no explanation, and the court cannot conceive of a reasonable explanation, for a claim that Respondents spent $32,579.00 on PACER services. PACER[5] is the electronic docket maintained by federal courts. There is no charge to register for PACER or CM/ECF by an attorney. (*See* District of Colorado ECF User Manual, Version 5.x (12/2/2011).) When a document is filed in PACER, each party to the litigation receives a free "look" at the filed document and all its exhibits and attachments. Such a "look" produces a downloaded Adobe .pdf file which can be saved to a computer or other electronic storage device and/or printed. Once saved to another computer, device or server, that one time downloaded document can be re-created unlimited times at no further cost. Alternatively, if the free initial view of the document is printed, it can then be photocopied or scanned and re-printed if needed again. To the extent a party squanders its first "look" and needs to retrieve a filed document again, the cost is a modest $.08 per page to retrieve the document but with a maximum charge for any one document of $2.40 regardless of page length. (See PACER Fees, www.cod.uscourts.gov.) Notably, no PACER billing statements were submitted to support this outlandish cost request. This court declines to recommend that this cost be borne in any part by Petitioner.

Finally, the Respondents claim costs for a court reporter for a deposition of $626.16 and meals for unspecified people of during the unspecified deposition of $182.03. The only

---

[5] Also referred to as CM/ECF.

deposition taken in the case was accomplished by the Petitioner and therefore the Petitioner would have borne the court reporter fees.  Respondents were ordered to bear the entire costs of the second deposition of the same deponent due to the deponent's initial unpreparedness.  (*See* April 30, 2009 Order at 9.)  Accordingly, neither meals nor court reporter costs associated with either deposition can be shifted to Petitioner.

Finally, the Respondents list $1,214.00 in "costs" billed by M&A.  This cost request is completely unsupported by any description, invoice[6] or other indicia of what may be included.  While the court does not doubt that M&A may have incurred legitimate costs during its representation of Respondents, a blanket and conclusory number on a piece of paper does not meet Respondents' burden to provide sufficient information and supporting documentation to allow the court to come to a reasoned decision concerning the submission of the cost items included.  *See Grynberg,v. Ivanhoe Energy, Inc*., 2011 WL 3294351, at *10.  Therefore, the court will not recommend allowance of the $1,214.00 in unidentified costs.

*Conclusion*

In sum, the court has specifically considered the factors supporting an award of cost shifting in connection with a Section 1782 proceeding including, (1) whether the nonparty has an interest in the outcome of the case, (2) whether the nonparty can more readily bear its costs than the requesting party, and (3) whether the litigation is of public importance.  *Crandall*, 2007 WL

---

[6] Respondents include several M&A billing invoices (Mot.Br., Attach 4, 5, and 9 [Doc. Nos. 182-4, 182-5 and 182-9]), however the invoices simply quote blanket dollar entries under a category called "Costs/Expenses" without further elaboration and, even so, only represent costs in the amount of $209.57.

162743, at *1.  Using these standards, the court makes the following conclusions:  First, the expense incurred by Respondents to comply with Petitioner's demands has been significant, although not all of the expense was reasonable and therefore entitled to cost sharing.  Second, all parties, including the Petitioner, were aware of the potential for cost-shifting at all relevant points during this dispute.  Third, the Respondents, while not parties to the specific foreign litigation for which the subpoenas were originally served, have a significant interest in the outcome of the worldwide litigation and at least one of them is actually a party in a related case. Respondents were at all times likely to have been key witnesses in the underlying litigations and the litigation matters could have significant financial ramifications for Respondents.  Fourth, Respondents and Petitioner have a significant ability to readily bear their own costs particularly in terms of attorneys' fees which are no doubt now in the millions of dollars considering all the litigation related to the primary issues between them.[7]  Fifth, this lawsuit has little public importance concerning as it does individual investors' participation in various private ventures.

The court concurs with the early assessment and order of Magistrate Judge Hegarty that an equal sharing of the allowable costs of production of the documents by Respondents to Petitioner is appropriate.  The court has specifically set forth reason to allow total costs in the

---

[7] "With respect to the relative ability of the parties to bear the costs, the respondents (sic) submissions indicated they are persons of considerable wealth.  MWP is a law firm, they're about a 20-person law firm, with offices in Almaty, Kazakhstan and Baku, Azerbaijan.  Their gross annual revenues last year were $6.5 million . . . ." (Transcript, Motion Hearing July 20, 2007 at 37:2-8.)

amount of $427,172.96. Therefore, it is recommended that Petitioner's share of the costs be $213,586.48.

WHEREFORE, for the foregoing reasons, I respectfully

**RECOMMEND** that

"Respondents' Motion for Reimbursement of Costs and Fees" [Doc. No. 181] be **GRANTED in part** and that Petitioner be ORDERED to pay to Respondent the total sum of $213,586.48 within fourteen days of the court's order accepting this Recommendation as its share of the costs of production pursuant to the Rule 45 subpoenas.

It is further **RECOMMENDED** that

Upon payment in full of the $213,586.48 by Petitioner to Respondents for its share of costs associated with the production of documents at issue in this case, the security posted by Petitioner in response to the court's April 30, 2009 Order be released and the case closed.

## ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 19th day of March, 2012.

BY THE COURT:

/s/ Kathleen M. Tafoya
Kathleen M. Tafoya
United States Magistrate Judge