IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 06-cv-02575-MSK-KMT

In re:

APPLICATION OF MICHAEL WILSON & PARTNERS,
LIMITED, FOR JUDICIAL ASSISTANCE PURSUANT
TO 28 U.S.C. § 1782

**ORDER OVERRULING OBJECTIONS TO ORDER OF MAGISTRATE JUDGE**

**THIS MATTER** comes before the Court on the Respondents' Rule 72 Objection to Magistrate Judge's Recommendation Granting in Part Respondents' Motion for Reimbursement of Costs and Fees (**#189**), to which Petitioner responded (**#190**), and Respondents replied (**#191**). The Recommendation (**#188**) recommends granting in part Respondents' request for reimbursement of costs incurred by Respondents in complying with subpoenas issued in these proceedings, but recommends denying a request for attorney's fees. Having considered the same, the Court **FINDS** and **CONCLUDES** the following.

**I. Background**

This matter concerns fees and costs incurred in responding to subpoenas issued pursuant to 28 U.S.C. § 1782 in connection with lawsuits pending in foreign jurisdictions. The Court incorporates by reference the background facts as set forth in the Recommendation. To the extent additional facts are relevant to the decision here, they are referenced in the analysis.

Respondents filed a Motion for Reimbursement of Costs and Fees (**#181**), which Petitioner Michael Wilson & Partners ("MWP") opposed. According to Respondents, they produced approximately 15,000 documents and reviewed prior to production over 325,000 documents, and produced a single Rule 30(b)(6) witness for deposition. In the Motion,

Respondents seek a total award of $2,151,053 in costs and fees, comprised of $1,592,876 in costs and $558,177 in attorney's fees.

The cost request is further broken down as follows:

- $506,307 incurred for KPMG services (KPMG set up the searchable document database to store and search for potentially responsive documents; this figure includes attorney's fees incurred by Marcus & Auerbach in negotiating a reduction of KPMG's bill)
- $1,214 for unspecified costs incurred by Marcus & Auerbach
- $96,224 for costs incurred by Dorsey & Whitney
- $989,131 billed to Respondents for contract reviewers and paralegals (but not Dorsey or M&A lawyers) to search Respondents' documents for those responsive to the subpoena

The attorney's fees request is also broken down and is comprised of the following categories:

- $20,078 in relevant attorneys' fees expended by Marcus & Auerbach in the § 1782 action
- $20,861 for Dorsey time spent retaining, briefing and instructing KPMG
- $25,579 for Dorsey time spent devising and negotiating search terms
- $182,024 for Dorsey time spent dealing with KPMG anomalies
- $86,786 for Dorsey time spent on the anti-suit injunctions and quashing the personal depositions of the Respondents in the § 1782 action
- $25,684 for Dorsey time spent on the initial review and advice on subpoena
- $27,623 for Dorsey time spent preparing for the subpoena response in the § 1782 action
- $169,542 for Dorsey time spent for set up, data capture, and to inform and instruct the review team

However, a significant factor in the analysis here is the position taken by Respondents in the lawsuit they initiated against their attorneys, Dorsey & Whitney, in Delaware Superior Court, CA No. 09C-08-239 JAP (the "Delaware Litigation"), for alleged overbilling in connection with complying with the subpoenas in this case. Respondents' Pretrial Memorandum in Delaware

Litigation, **#185-5**. In the Delaware Litigation, Respondents assert that "the total cost of the §1782 representation and production" should have been approximately $571,187. *Id*. This statement is instructive to the Court not as a binding determination of what Respondents will ultimately pay but rather as to what Respondents believe is reasonable.

The Recommendation thoroughly reviews the background of the case, the relevant law, the requested categories of reimbursements and supporting documentation, and recommends the following: (1) no reimbursement of any of Respondents' attorney's fees; (2) reimbursement of half of the costs paid to KPMG (but not the attorneys' fees incurred by Marcus & Auerbach in reducing KPMG's bill); (2) no reimbursement for contract attorney and paralegal costs associated with reviewing and retrieving documents; (3) reimbursement of half of miscellaneous reasonable costs incurred including fax, conference calls, long distance calls, after hours secretary, anti-virus scan, and electronic bates numbering; (4) no reimbursement for photocopy expenses, messenger and overnight delivery costs, various expenses attributable to after-hours working, PACER services, court reporter fees, and costs billed by Marcus & Auerbach that were unsupported by any documentation.

The Respondents object to the Recommendation to the extent it denies reimbursement of any attorney's fees, denies reimbursement of the costs associated with having contract attorneys and non-attorneys search, retrieve, and produce the requested documents, and requires cost-sharing of the KPMG expense. Respondents also submit details regarding the costs incurred by Marcus & Auerbach in an effort to recover those expenses. In other words, Respondents contend that $558,177 in attorney's fees, $1,214 for unspecified costs incurred by Marcus & Auerbach (now substantiated), and $989,131 billed to Respondents for contract reviewers and paralegals to review and produce documents should be shifted to MWP, as well as the full cost

3

of the KPMG services.

## II. Standard of Review

Disputes regarding attorney's fees may be referred to a Magistrate Judge and treated as a dispositive matter under Fed. R. Civ. P. 72(b). Fed. R. Civ. P. 54(d)(2)(D). When a magistrate judge issues a recommendation on a dispositive motion, the parties may file specific, written objections within fourteen days after being served with a copy of the recommendation. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The district court shall make a *de novo* determination of those portions of the recommendation to which timely and specific objection is made. *See U.S. v. One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). Respondents' objections are timely filed and so the Court will review the matters to which Respondents have noted specific objections *de novo*.

## III. Analysis

**A.      Cost Allocation Principles Under Fed. R. Civ. P. 45**

Unless other provisions are made, discovery in a section 1782 action is governed by the Federal Rules of Civil Procedure. 28 U.S.C.A. § 1782(a). Fed. R. Civ. P. 45 governs the issuance of subpoenas to non-parties, and provides the following:

> (c) Protecting a Person Subject to a Subpoena.
>
> (1) Avoiding Undue Burden or Expense; Sanctions. A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The issuing court must enforce this duty and impose an appropriate sanction--which may include lost earnings and reasonable attorney's fees--on a party or attorney who fails to comply.
>
> (2) Command to Produce Materials or Permit Inspection.
>
> \* \* \*

> (B) Objections. A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing or sampling any or all of the materials or to inspecting the premises--or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
> (i) At any time, on notice to the commanded person, the serving party may move the issuing court for an order compelling production or inspection.
> (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

Fed. R. Civ. P. 45(c). Rule 45 thus imposes an obligation first on MWP, and where there is an objection, the Court must ensure that a person commanded to respond to a subpoena is not subjected to an undue burden or expense as a result of complying with the subpoena. This may be achieved by quashing the subpoena, narrowing its scope, or by requiring that the incurred costs be borne by the requesting party. *See In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 669 F.2d 620, 623 (10th Cir. 1982) (no abuse of discretion in requiring a non-party's compliance with a subpoena to be conditioned on payment of the costs and noting that in responding to the subpoena the non-party was performing work that did not inure to its own benefit; rather, benefit went to the discovering party). As interpreted by the Court of Appeals for the D.C. Circuit, "the questions before the district court are whether the subpoena imposes expenses on the non-party, and whether those expenses are 'significant.' If they are, the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder 'non-significant.'" *Linder v. Calero-Portocarrero*, 251 F.3d 178, 182 (D.C.Cir. 2001). However, this does not necessarily mean that the requesting party must bear the entire cost of compliance. *Id*.

A three-part test is often used in determining whether, and to what extent, attorney's fees and costs should be shifted from person responding to a subpoena to the party seeking the discovery: (1) whether the non-party actually has an interest in the outcome of the case, (2) whether the non-party can more readily bear the costs than the requesting party, and (3) whether the litigation is of public importance. *In re Exxon Valdez*, 142 F.R.D. 380, 383 (D.D.C.1992); see also *Crandall v. City & County of Denver, Colorado*, 2007 WL 162743 (D. Colo. 2007) (adopting same factors). Other factors that courts have considered include the scope of the discovery, the invasiveness of the request, the extent to which the producing party must separate responsive information from privileged or irrelevant material, and the reasonableness of the costs of production. *Sound Sec., Inc. v. Sonitrol Corp.*, 2009 WL 1835653, *2 (W.D. Wash. 2009), quoting *U.S. v. Columbia Broadcasting System, Inc.*, 666 F.2d 364, 372 (9th Cir. 1982).

As the party seeking reimbursement, the Respondents have the burden of establishing the existence and reasonableness of the costs or fees incurred, and that these expenses should be shifted back to MWP. *Klesch & Co. v. Liberty Media Corp.*, 217 F.R.D. 517, 524 (D.Colo.2003) (party objecting to subpoena has burden of persuasion in showing that discovery requested imposes a burden).

**B.      Preliminary Analysis of Relevant Factors**

The Court begins with a general analysis of the factors governing cost-shifting in these circumstances. Respondents' specific objections to the Recommendation are then discussed further below.

Determining whether the Respondents should be reimbursed for attorneys' fees and certain costs incurred in responding to MWP's subpoenas is a matter within the Court's discretion. *Petroleum Prods. Anti-Trust Litig.*, 669 F.2d at 623. In exercising this discretion, the

Court considers the following factors to be of assistance: (1) whether the Respondents actually have an interest in the outcome of the case, (2) whether the Respondents can more readily bear the costs than the requesting party, (3) whether the litigation is of public importance; (4) the scope of the discovery and the extent to which the Respondents were required to separate responsive information from privileged or irrelevant material; and (5) the reasonableness of the costs of production and fees requested.

With respect to attorney's fees in particular, the Court notes that Magistrate Judge Hegarty's ruling, which this Court twice affirmed, is the law of the case. The Respondents have been on notice since 2007 that they would not be likely to recover their attorney's fees for document review in this matter given the circumstances presented. The Court gives this significant weight in resolving the Respondents' objections.

### 1. Respondents' interest

The Recommendation notes that Respondents are interested parties with a stake in the outcome of the underlying litigation, which relates directly to their projects and dealings with parties on both sides of the underlying dispute. In addition, it appears that the Respondents have been involved in the overseas litigation; Respondents Savage and Sinclair have given witness statements supported by documentation produced in this litigation and Respondent Sinclair is a party in the Bahamas litigation. This factor thus weighs against shifting costs and attorney's fees to MWP.

### 2. Ability to Bear Expense

The parties have provided little direct evidence regarding their relative abilities to bear the cost of discovery. However, there is some evidence on the record indicating that the Respondents can bear the expense of the production. According to evidence submitted by MWP

in connection with previous briefing, in 2006, Frontier listed assets in excess of $26 million on its balance sheet. #**52-16**.[1]  Respondent Sinclair was at some point voluntarily contributing to the defense of several of the defendants in the underlying lawsuits, including by loaning Mr. Emmott £250,000 for legal fees. #**52-17**.  Sokol is a "vehicle" through which Frontier and the individual Respondents (and other investors) develop projects before spinning them off into some other form. #**20**.  MWP asserts that both individual Respondents have significant wealth.

In comparison, there is very little information provided about the ability of the requesting party, MWP, to bear the cost of the production.  The only evidence in this regard is that MWP, a law firm, had gross annual revenues in 2006 of $6.5.

As the party seeking to shift attorney's fees and costs incurred, it is up to the Respondents to demonstrate that they cannot more readily bear the expense than MWP.  In the absence of additional evidence in this regard, this factor does not weigh in favor of shifting these expenses.

### 3. Litigation of Public Importance

As the Recommendation notes, the underlying litigation in this case is not of public importance, but rather involves the purely private business interests of the litigating parties and the Respondents. Therefore, this factor weighs against the shifting of attorney's fees and costs.

### 4. Scope of Discovery, Need to Separate Privileged/Irrelevant Material

Although MWP's initial subpoena requests were quite broad, they were subsequently narrowed.  Even as narrowed, however, the Respondents were required to review and produce a significant number of documents.

---

[1] According to Frontier's 2010 Annual Report, posted on its website, its assets in 2010 were $142,389,854.

Nonetheless, the necessity of the attorneys' fees and costs incurred in this process, including the need to separate privileged or irrelevant material from discoverable documents, is highly questionable. The Respondents seek nearly one million dollars in "costs" incurred for contract reviewers (which, based on representations made in the Delaware Litigation, includes contract attorneys) and paralegals to review and produce responsive documents. In addition, they seek significant attorney's fees for retaining, briefing and instructing KPMG, devising search terms, dealing with problems in the KPMG database program, and time spent for set up, data capture, and assisting the review team. However, according to the representations made in the Delaware Litigation, the KPMG database was extremely expensive, had inherent problems, and was ultimately abandoned based on Dorsey's errors in the estimated hit rate and failure to formulate and revise appropriate search terms. Ultimately, a large number of documents were reviewed manually. In addition, according to Respondents, Dorsey's document review was significantly slowed by the "inexperienced, unsupervised and untrained document reviewers" and the problems with the database. Therefore, it appears that Respondents seek to shift the expenses incurred for both the set up and use of an ineffective document database <u>and</u> for the full manual review of the documents after the database was abandoned. There is no evidence showing the amount of effort necessary for a competent search and identification of relevant documents. On this record, the Respondents have failed to demonstrate that the fees or costs incurred here were related to the scope of the subpoenas and the need to segregate irrelevant and privileged information, rather than the errors and misconduct of Respondents and their attorneys. This again weighs against requiring MWP to reimburse Respondents for these expenses.

  **5.  Reasonableness of Fees Incurred**

By Respondents' own admission, the fees and costs incurred in this matter were

9

unreasonable. Indeed, Respondents have taken the position in their litigation against Dorsey & Whitney that the "the total cost of the §1782 representation and production" should have been approximately $571,187.

In addition, as noted in the Recommendation, the Respondents were on notice from early in the litigation that at best, costs would be shared and that no attorney's fees for document review would be reimbursed. Respondents were in the best position to control the costs of the production and attorney's fees, and given the significant failure in this regard, the Respondents have failed to establish that either the attorney's fees or costs of the manual review incurred should be shared by MWP.

None of the above factors support shifting the expenses claimed by Respondents to MWP.

C.     **Respondents' Specific Objections**

  1.     **Failure to Award Any Attorney's Fees**

Respondents object to the Recommendation on the grounds that not awarding any attorney's fees is erroneous. Specifically, Respondents take the position that "some non-zero amount of attorneys' fees incurred in responding to the subpoena must be reasonable." Objection, #**189**, at 6. The problem with this assertion, however, is that reasonableness is not the only factor considered in determining whether to allow reimbursement of attorney's fees and, moreover, Respondents have failed to demonstrate what, if any, of the fees they claim would be reasonable. Respondents have simply provided broad categories of fees incurred and asserted that they are reasonable and necessarily incurred in responding to the subpoenas, while notably claiming the opposite in the Delaware Litigation. In support of their claim that some unspecified portion of the fees is reasonable they provide no specific argument or evidence, but appear to

10

rely solely on evidence showing that such amounts were billed and paid.

The Court turns to the specific categories of fees sought by Respondents and whether any showing has been made as to their necessity or reasonableness:

- $20,078 in relevant attorneys' fees expended by Marcus & Auerbach in the § 1782 action
- $20,861 for Dorsey time spent retaining, briefing and instructing KPMG
- $25,579 for Dorsey time spent devising and negotiating search terms
- $182,024 for Dorsey time spent dealing with KPMG anomalies
- $86,786 for Dorsey time spent on the anti-suit injunctions and quashing the personal depositions of the Respondents in the § 1782 action
- $25,684 for Dorsey time spent on the initial review and advice on subpoena
- $27,623 for Dorsey time spent preparing for the subpoena response in the § 1782 action
- $169,542 for Dorsey time spent for set up, data capture, and to inform and instruct the review team

As discussed above, to the extent Respondents seek to recover their fees incurred in connection with Dorsey setting up the database, dealing with KPMG, and administering the document search and review, the Respondents have made no showing regarding what, if any, portion of these fees incurred are reasonable or necessary. As to fees incurred by Dorsey or Marcus & Auerbach for efforts related to the subpoena response, in the absence of any explanation or showing regarding what these efforts were or how they related to the subpoenas, the Court has no basis to make a reasoned determination as to what, if any, portion of those fees should be reimbursed. Finally, the remaining category of fees relates to matters such as the "the anti-suit injunctions," which was an issue in the underlying litigation, not the discovery litigation here. Again, there has been no evidence that these fees were necessarily incurred in response to the subpoenas or were reasonable. Therefore, while under some circumstances reimbursement

11

of attorney's fees may be appropriate, after application of the factors discussed above and the failure of the Respondents to carry their burden of persuasion to demonstrate the necessity or reasonableness of these fees, the Court sees no basis to depart from the Recommendation.

### 2. Interest of the Parties

The Respondents also contend that the Recommendation is in error as to attorney's fees because it overly emphasized the interest of the Respondents in the underlying overseas litigation. The Court sees no error in this regard. Although only Mr. Sinclair was an actual party in the overseas litigation, and owned shares in one of the projects at issue, there is sufficient evidence on the record to show that all of the Respondents were involved in the events leading up the underlying litigation and have an interest in the projects underlying the dispute.[2]

### 3. Cost of Manual Review and Production

As noted above, the Respondents have sought costs incurred with respect to both the acquisition and ineffective use of an expensive document database system as well as the expense of manual review of documents after abandonment of the database. The Recommendation considered reimbursement of a portion of the costs incurred in connection with implementing the database to be appropriate; such a database was to the benefit of both MWP and Respondents since, if used correctly, it had the potential to significantly reduce document production costs and

---

[2]According to the affidavit submitted by Respondents' own representative, Mr. Savage and Mr. Sinclair "are the principal driving force behind both Frontier and Sokol [the entity Respondents]," that Sokol and Frontier used to be clients of MWP but then began working with the law firm established by Mr. Emmott and his associates, that Messrs Sinclair and Savage intended to be witnesses in the two proceedings on behalf of Mr. Emmott, that both Mr. Sinclair and Mr. Savage were closely involved in a transaction involving Max Petroleum (a major subject of the underlying litigation) and that Mr. Sinclair had a financial interest in this deal, and that both MWP and Mr. Emmott's firm worked on a number of the projects to which the subpoenas was directed. #20. This is adequate support for the determination that the Respondents are not strangers to the underlying litigation.

streamline the search process. Moreover, the Respondents otherwise would not have had any use for such a system. However, given the failure of the Respondents to appropriately use the database, the Recommendation determined that the manual review was an unnecessarily incurred expense, which MWP had no ability to control or contain, and should not be reimbursed.

The Respondents object to this determination on the grounds that the manual search and review is an appropriate element of the "cost of imaging, preserving, searching, and producing the requested documents," which Magistrate Hegarty ruled should be shared. As noted above, however, this requested "cost" clearly includes attorney's fees for document review by contract attorneys[3], which Magistrate Hegarty also ruled was not recoverable. In addition, as Respondents forcefully argue in the Delaware Litigation, this cost is completely unreasonable and was the result of Respondents' decision to go with a 100% manual review after Dorsey failed to effectively use the database system. Again, while some amount of cost sharing might have been appropriate for some portion of the reasonable cost of "imaging, preserving, searching, and producing the requested documents," the Respondents have failed to carry their burden to show what, if any, of this amount was reasonably and necessarily incurred given the existence of a document database system. There is no basis, other than sheer speculation, to separate the wheat from the chaff with respect to this item and so no reimbursement will be made.

    **4.**    **Cost Sharing of KPMG Expense**

---

[3]Respondents consistently emphasize that this work was done by "outside employees," not by Dorsey attorneys, but it is apparent that these outside employees were attorneys. Magistrate Judge Hegarty's order precluded recovery of attorney's fees for document review; it was not limited to attorney's fees incurred by Dorsey & Whitney attorneys for document review. Respondents cannot transform these prohibited attorney's fees into "costs" by attributing them to contract attorneys.

The Recommendation recommended the expense incurred in obtaining the KPMG database be reimbursed, but only half of that cost. The Respondents object, primarily on the grounds that this represents only a small portion of the total costs and fees they are claiming. Given the discussion above, the Court sees no reason to modify this allocation.

### 5. Costs incurred by Marcus & Auerbach

Finally, the Respondents seek recovery of costs incurred by their current attorneys. The Recommendation declined to award these costs because no itemization or substantiation had been provided. Respondents have attached an itemized breakdown of these costs in an exhibit to the objections, and now seek a total of $2,871.71 in such costs. **#189-1**. The costs include meal expenses, Fed Ex delivery charges, Lexis Nexis fees, photocopying costs, PACER fees, transcripts from court hearings, travel expenses for the deposition of Mr. Savage, transcript costs for Mr. Savage's deposition, and snacks.

As noted in the Recommendation, the Respondents have not shown that costs such as PACER fees, Lexis Nexis fees, overnight delivery fees, and photocopying costs were necessarily or reasonably incurred in connection with responding to the discovery requests. With respect to the deposition costs, these appear to be incurred in connection with a second deposition of Mr. Savage, the Respondents' Rule 30(b)(6) representative, necessitated because Mr. Savage was insufficiently prepared for the original deposition. Respondents were ordered to bear all fees and costs associated with this deposition. **#109**. Respondents' attempt to recover costs from MWP that they were expressly ordered to bear further erodes their credibility as to these matters. The final category of costs requested is for court hearing transcripts, which appear to be for the convenience of Respondents' attorneys rather than a cost necessarily incurred as a result of the subpoenas. Therefore, the Court declines to require MWP to reimburse Respondents for these

14

costs.

In summary, the Recommendation recommends that $213,586.48 be reimbursed to Respondents. Considering that this amount is slightly less than half of $571,187, the amount that Respondents contend in the Delaware Litigation is the reasonable amount of costs and attorney's fees that should have been incurred in complying with the subpoenas, the Court agrees that this is an appropriate reimbursement.

**IT IS THEREFORE ORDERED** that the Respondents' Rule 72 Objection to Magistrate Judge's Recommendation Granting in Part Respondents' Motion for Reimbursement of Costs and Fees (#**189**) are overruled and the Recommendation (#**188**) is adopted.

The Clerk of the Court shall close this case.

Dated this 24th day of May, 2012

**BY THE COURT:**

*[signature: Marcia S. Krieger]*

Marcia S. Krieger
United States District Judge